**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

FEB 10 2003



LUTHER D. THOMAS
By: J.A. Williams
Deputy Clerk

CAMP LEGAL DEFENSE FUND, INC.,      :

    Plaintiff,      :

    v.      :      CIVIL ACTION
                            NO.
CITY OF ATLANTA and      :      **1** 03 CV 0387
GREG PRIDGEON,

    Defendants.      :

### COMPLAINT

Comes now plaintiff and respectfully shows:

1.

This is an action under 42 U.S.C. §1983 for violation of First
and Fourteenth Amendment rights under color of state law.
Plaintiff also seeks damages under state law and equitable relief
under state law.

2.

This court has jurisdiction of the action under 28 U.S.C.
§1343 and §1367.

3.

Plaintiff is a corporation under the laws of Georgia and is
registered to do business in the State of Georgia.

4.

Plaintiff and its predecessors have for numerous years
endeavored to put on a political demonstration promoting the reform

FORMS RECEIVED
Consent To US Mag. ____
Pretrial Instructions ____
Title VII NTC ____

of marijuana laws. <u>See</u> <u>Coalition for the Abolition of Marijuana</u>
<u>Prohibition and Paul Cornwell II v. City of Atlanta</u>, 1:96-cv-407A.

5.

Defendant Pridgeon is a resident of the Northern District of
Georgia and is subject to the jurisdiction of the Court. Defendant
City of Atlanta is a body politic with the ability to sue and be
sued and is subject to the jurisdiction of the Court.

6.

At all times herein defendant Pridgeon acted for the City of
Atlanta as Chief of Staff.

7.

On or about November 27, 2002 defendants Pridgeon and the City
of Atlanta unilaterally determined that no more applications would
be  accepted  for  festival  or  public  assembly  permits  or
demonstrations in any park or on any street of the City.

8.

Such  actions  were  illegal  under  the  existing  festival
ordinance and were a prior restraint under the First and Fourteenth
Amendment, as well as Art. 1, Sec.1, Paras. V and IX of the Georgia
Constitution.

9.

Plaintiff  attempted  to  apply  for  a  permit  but  was  denied
because of the refusal to accept and further the application.

10.

Such actions were taken under color of state law.

2

11.

Defendants are liable to plaintiff for damages, actual or presumed under federal law or state law in the amount of $25,000.00.

12.

Defendant Pridgeon's actions were in reckless disregard of plaintiff's constitutional rights and he is liable to plaintiff for punitive damage under federal law in the amount of $50,000.00.

13.

On or about January 14, 2003 the defendant City of Atlanta passed a new festival ordinance, which was signed into law by the Mayor.

14.

This action was taken under color of state law.

15.

A true and correct copy of the 2003 Festival Ordinance is attached as Exhibit A.

16.

The ordinance is over broad and constitutes a prior restraint under the First and Fourteenth Amendment and Art. 1, Sec. 1, Paras. V and IX of the Georgia Constitution. In addition the ordinance is not a reasonable time, manner, and place restriction under the Georgia Constitutional provisions granted above.

17.

For example certain speech involving dancing, music, dramatic production, art exhibition, and parades is regulated more heavily

3

than other speech.

18.

Commercial speech is regulated more heavily than non-commercial speech.

19.

In particular the City reserves to itself a monopoly on speech as events it sponsors are not subject to the festival ordinance solely because the event is city sponsored. See Sec.138-188 (b).

20.

The ordinance imposes a prior restraint on the staging of events in the following manner.

a)   According to the 2002 Outdoor Festival Ordinance (assuming its requirements remain in force) before applying for a permit the plaintiff must appear before the NPU chair in the district the event is to be held. At least one month's notice is required to address a NPU meeting. In other words notice must be given and the application made more than 90 days before the event even though the ordinance requires that application must be made no later than 60 days prior to the event.

b)   According to the 2003 Festival Ordinance the plaintiff must hand deliver or send by registered mail, with receipt, a Notice of Intent to Hold a Festival to the city council persons affected by the event and the NPU chair in the district the assembly is to be held. This

4

must be done before applying for a permit.

c)      Because of the suspension of the right to apply for
        permits as of November 27, 2002, which was reinstated on
        January 16, 2003, no one can apply for permits for events
        that lie outside the 90-day requirement for filing the
        application. Considering the application process was
        resumed on January 16, 2003, the first possible date upon
        which a permit could be granted would be April 15, 2003.

d)      Depending upon the NPU requirement, the City has banned
        all events until either April 15, 2003, or sometime in
        either May or June of 2003. Section 138-201 is therefore
        unconstitutional.

e)      The 60-day requirement in the 2002 Festival Ordinance is
        in and of itself prior restraint.

f)      The 90-day requirement in the 2003 Festival Ordinance is
        in and of itself prior restraint.

g)      Because the application cannot be made before October 1st
        of the year preceding the event, an applicant would have
        to have given notice to the affected city council members
        and the appropriate NPU prior to October 1st in order to
        comply with the 90-day limit. In other words, to apply
        for a permit in the first part of January, the process
        would take substantially longer than 90 days.

21.

The ordinance requires off duty police officers to be hired

5

which "shall be the same or more than the number of private security guards hired". In the same section it states that there will be no requirement to pay for general law enforcement. In the past the defendant City through its police officials have actively discouraged police from accepting such employment. See Section 138-203 (5).

22.

The application is required to be hand delivered or sent with receipt to all city council members for areas where the festival is to be held as well as private citizens serving on NPUs.

23.

The City has banned two events from happening during the same time even if the events are held in different locations.

24.

The Chief of Staff has unreviewed discretion to put limits "on the frequency of permitted festivals within a particular district or within a particular park or speech event site". These events could be banned in Piedmont Park, which is universally acknowledged to be the most appropriate for conveying one's message.

25.

A festival monitor is authorized to revoke a permit if in his or her sole discretion he believes the event "to constitute a threat to public safety or to the public welfare". Indeed for "any other material violation" he is also in his unbridled discretion allowed to revoke a permit.

6

26.

The ordinance requires copies of the application to be passed upon by numerous Departments, whether or not the Department will be remotely involved in the event or not.

27.

The ordinance provides for non-commercial status only if events do not charge a fee, whether or not the fee is used to defray expenses and do not "offer, support, or include vendors" whether or not the Plaintiff or others like it receive any money from vendors.

28.

The ordinance provides to an applicant a monopoly of time and place based upon previous use.

29.

The ordinance allows the chief of Staff to deny permits for reasons unrelated to the validity of the permit such as failing to complete payments for a previous filing or similar default.

30.

The Chief of Staff may deny or revoke a permit under Sec.138-203 (10) based upon his conclusion that the applicant has violated a law or local ordinance anywhere on the face of the earth, such that a permit previously granted to such an applicant has been revoked, and if he has "good cause to believe such similar conduct may occur in the proposed festival, provided that such similar conduct is a material violation of the article or of laws or

ordinances pertaining to the public order".

31.

The ordinance requires the applicant to provide insurance for the City and its agents even though the City and its agents enjoy sovereign immunity and official immunity for such suits.

32.

The ordinance provides for a tax in the form of a permit fee ranging from $1.00 to two dollars per attendee. Indeed the tax on smaller events is greater than the tax on larger events. The burden of collecting and paying this tax is on the applicant. The City already collects an Occupation Tax and an ad valorem tax that is dedicated specifically to the park system.

33.

In addition the ordinance provides for a supplemental user fee deposit in advance. Such deposit ranges from $50.00 to $12,500.00 and the amount of such fee is to be determined subsequent to such event. No provision is made on how to determine the deposit amount and there is no appeal process.

34.

In addition the ordinance provides for an environmental impact fee which money is to be directed between private individuals and the City.

35.

The ordinance provides that unless a party subjects itself to its provisions, no sound equipment, no electrical power access, or

8

parked vehicles may be used, thereby limiting the ability of an applicant to convey its message.

36.

The ordinance defines a Class E permit as an event which has an attendance of between 250 and 1,999 persons "over the entire period of the festival". In other words, any event of three hours of less which happens to attract more than 250 persons "passing by" would fall into this category. For example during a three-hour period in Piedmont Park thousands of people pass by one spot on any given weekend. The ordinance denies due process under the Fourteenth Amendment and Art.1 Sec.1 Para 1 of the Georgia Constitution.

37.

It is arbitrary and capricious to require the use of off-duty police officers under Sec. 138-201 (17) and 138-203 (5) when non-POST certified officers provide security for City Hall and Fulton and Dekalb County Courthouses.

38.

It is arbitrary and capricious to require an application to be mailed to each of the Departments listed in Section 138-202.

39.

It is arbitrary and capricious to have hold harmless agreements under Sections 138-204 and Sec.138-205 (e) when the City fails to provide insurance to protect its residents and indeed when the City has sovereign immunity and its officers official immunity.

40.

The ability to revoke a permit in Section 138-201 (b) is not accompanied by any procedural safeguards and violates due process.

41.

The ability to revoke a permit under Section 138-203 (12) and Sec.138-207 (c) denies due process in that it provides no adequate post-deprivation hearing. The hearing provided in Section 138-208 (a) does not provide such process in that it is "informal" and provides for no subpoena of witnesses or documents or cross examination of such witnesses.

42.

The ordinance denies equal protection under the Fourteenth Amendment and Art. 1, Sec. 1, Para. II of the Georgia Constitution.

43.

The ordinance unconstitutionally discriminates against commercial speech and non-commercial speech and among different types of non-commercial speech.

44.

The ordinance unconstitutionally discriminates against city sponsored and non-city sponsored speech.

45.

The ordinance unconstitutionally discriminates against larger and smaller event applicants so that the application fee, permit fee, and supplemental user fee are larger per capita for smaller event applicants.

46.

The ordinance unconstitutionally discriminates against commercial and non-commercial speech in its fees and between city sponsored and non-city sponsored events.

47.

On or about April 28, 2002, plaintiff applied to hold a demonstration of less than three hours duration to be held in Piedmont Park on September 21, 2002.

48.

On or about August 23, 2002, defendant Pridgeon and the City denied plaintiff the use of the park and instead directed that any such demonstration be held in Woodruff Park. Such notice was untimely under the 1999 Atlanta Festival Ordinance.

49.

Such action was an unlawful prior restraint, an unreasonable time, manner, and place restriction, not the least restrictive alternative and failed to provide an alternative means of meaningful access.

50.

As a proximate result Plaintiff was damaged in the amount of $25,000.00 in actual or presumed damages.

WHEREFORE, Plaintiff prays:

a) for judgment as set out above declaring the 2003 Festival Ordinance unconstitutional in whole or in part

11

and ordering defendants not to enforce the same;

b) for damages set out as above;

c) for reasonable attorneys fees;

d) for jury trial;

e) for such other and further relief as is just and proper.

Respectfully submitted,

Ralph Goldberg, Bar No. 299475
Attorney for Plaintiff

1766 Lawrenceville Hwy.
Decatur, GA   30033
(404) 636-0331



CITY COUNCIL
ATLANTA, GEORGIA

02-O-1777

AN ORDINANCE BY COUNCILMEMBERS
CLETA WINSLOW AND NATALYN ARCHIBONG

AS SUBSTITUTED AND AMENDED BY FULL COUNCIL

AN ORDINANCE REPEALING THE OUTDOOR FESTIVALS
ORDINANCE OF 2000 AND ENACTING THE OUTDOOR
FESTIVALS ORDINANCE OF 2003, AND FOR OTHER
PURPOSES.

WHEREAS, the City of Atlanta finds that an ever-increasing number of demands are being made upon City resources and infrastructure by applications to hold festivals and other special events in the streets and parks of the City; and

WHEREAS, in order to better conserve and allocate the City's resources, both in terms of personnel and of the infrastructure, the City finds that it is necessary to revise its regulation of the use of the City's parks and streets by those desiring to hold large gatherings of people known as festivals; and

WHEREAS, the intent of the City in adopting the Atlanta Outdoor Festivals Ordinance of 2003 is to insure that the City will have adequate advance notice of a proposed festival and the cooperation of the organizers in order to properly plan the city services, such as security, sanitation and traffic control that are required for such an event; and

WHEREAS, the intent of the City is also to insure that the city's parks are protected from extreme wear and tear, by limiting the number and type of events held in parks; and

WHEREAS, it is also the intent of the City, and the purpose of these ordinance revisions, that, insofar as is possible, the costs to the City in providing services to festivals are recouped, although it is not the intention that the cost of festival permit fees be used for revenue production:

NOW, THEREFORE, IT IS HEREBY ORDAINED BY THE COUNCIL OF THE CITY OF ATLANTA, GEORGIA:

Section One: That the Atlanta Outdoor Festivals Ordinance of 2000, which is codified as Atlanta City Code (1995) § § 138-186 through 138-208, be and same hereby is, repealed in its entirety.

Section Two: That a new Ordinance, to be styled the Atlanta Outdoor Festivals Ordinance of 2003, be, and the same hereby is, enacted, effective upon the repeal of the previous Ordinance as provided in Section One above, the text of

the repeal of the previous Ordinance as provided in Section One above, the text of which Atlanta Outdoor Festivals Ordinance of 2003, shall read and shall be codified as set forth in the Appendix to this Ordinance, which Appendix shall be a part hereof and incorporated herein by reference.

**Section Three**:     That the Atlanta Outdoor Festivals Ordinance of 2003 shall apply to all applications for outdoor festival permits pending at the time it takes effect; provided that applicants shall be allowed free amendment of their applications to conform to the new ordinance.  All permits granted for the calendar year 2003 and afterwards will be under the terms and provisions of the Atlanta Outdoor Festivals Ordinance of 2003 as hereby adopted.

**Section Four**: That all ordinances and resolutions in conflict herewith be, and the same are, hereby repealed to the extent of said conflict, and only for purposes of this ordinance.

A true copy,

*Rhonda Dauphin Johnson*

Municipal Clerk, CMC

ADOPTED as amended by the Council       JAN 06, 2003
APPROVED by the Mayor                    JAN 13, 2003



# APPENDIX TO ORDINANCE NO. 02-O-1777

## TEXT: ATLANTA OUTDOOR FESTIVALS ORDINANCE OF 2003

### ARTICLE VI. OUTDOOR FESTIVALS

#### DIVISION 1. GENERALLY

**Sec. 138-186. Title; Statement of Purpose and Intent**

(a)      *Title*

This article shall be known and may be cited as the Atlanta Outdoor Festivals Ordinance of 2003.

(b)      *Statement of Purpose and Intent*

The City of Atlanta finds that an ever-increasing number of demands are being made upon City resources and infrastructure by applications to hold festivals and other special events in the streets and parks of the City. In order better to conserve and allocate the City's resources, both in terms of personnel and of the natural areas and infrastructure, and to adequately protect public safety and the safety, health and welfare of neighboring property owners, residents and businesses, the City finds that it is necessary to regulate the use of the City's parks and streets by those desiring to hold large gatherings of people known as *outdoor festivals*.

The intent of City in adopting the Atlanta Outdoor Festivals Ordinance of 2003 is to insure that the City will have adequate advance notice of a proposed festival and the cooperation of the organizers in order properly to plan the city services, such as security, sanitation and traffic control that are required for such an event. The intent is also to insure that the city's parks are protected from extreme wear and tear, by limiting the number and type of events held in parks. To this end the City has authorized the creation of Festival Districts, so that the burden of providing a venue for festivals does not fall disproportionately upon certain districts to their detriment.

It is also the intent of City, and the purpose of this article, that, insofar as is possible, the costs to the City in providing services to festivals are recouped, although it is not the intention that the cost of festival permit fees be used for revenue production. It is the further intent of the City to promote and encourage events for the greater good and cultural diversity of the City and to abate the cost of thereof, where the abatement shall be provided regardless of content, message or sponsor in accordance with the terms of this ordinance. The costs to be recouped include, but are not limited to: personnel, equipment and supplies, sanitation (litter, debris and human wastes), wastewater, utilities, park maintenance and restoration – including long-term degradation – and park monitoring.

Amendment Incorporated by krp/OMC 1/08/03



# APPENDIX TO ORDINANCE NO. 02-0-1777

## TEXT:  ATLANTA OUTDOOR FESTIVALS ORDINANCE OF 2003

**Sec. 138-187. Definitions.**

The following words, terms and phrases, when used in this article, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning:

*Application* means a written request on forms supplied by the Special Events Coordinator which sets forth the information required to be provided by this article.

*Application fee* means the non-refundable fee paid in connection with an application made pursuant to this article.

*Chief of Staff*, unless otherwise designated by the Mayor, refers to the Chief of Staff of the Office of the Mayor.

*City-sponsored event* means a public event that is directly related to a recognized function of city government and which is in major part initiated, financed and executed by the City.

*Commercial* means any part of the net earnings of the outdoor festival inures to the benefit of any private shareholder, individual or for-profit corporation, as such term is defined by the Official Code of Georgia.

*Festival assembly area* means the entire area of the festival for which the applicant(s) are responsible under the terms of this ordinance, including the following elements: the festival production area, all vending locations connected with the festival, the area where the anticipated crowd can reasonably be expected to locate itself upon arrival at the festival, and a perimeter in every direction from the outer limits of the foregoing elements a distance of
    (1) the greater of three (3) blocks or one-thousand five hundred (1500) feet for all Class A events;
    (2) the greater of two (2) blocks or one thousand (1000 ) feet for all Class B events;
    (3) the greater of one (1) block or five hundred (500) feet for all Class C events;
    (4) two hundred (200) feet for Class D and E events.

All of the area within this perimeter shall be considered part of the *festival assembly area;* provided, the festival assembly area will not extend beyond physical features such as walls, ravines. railroad tracks and major highways, which presence creates a true and actual barrier to festival attendees.



# APPENDIX TO ORDINANCE NO. 02-0-1777

## TEXT:  ATLANTA OUTDOOR FESTIVALS ORDINANCE OF 2003

*Festival Monitor* means the person(s) employed by the City to act as a liaison between and among the City and its departments and offices, conservancies, and the applicant beginning with the set up phase of the event and continuing until the completion of the cleanup phase of the event.

*Festival production area* means the area or areas, not necessarily contiguous to each other, including and immediately surrounding the portion or portions of the festival location(s) which are central to the production of the festival, including, but not limited to, stages, barricades, utility poles, booths, tents, or other temporary or permanent structures or parked vehicles erected or utilized by the applicant for the production of the festival.

*Internal emergency services plan* means a plan submitted by the applicant and approved, as submitted or as modified thereafter, by the Chief of Staff, for the provision of emergency services, which term shall include fire and medical services, to public and private property, performers, entertainers, exhibitors, speakers or other persons in the *festival assembly area.*

*Internal security plan* means a plan submitted by the applicant and approved, as submitted or as modified thereafter, by the Chief of Staff, for the provision of security to public and private property, performers, entertainers, exhibitors, speakers or other persons in the *festival assembly area.* The term *internal security plan* does not apply to any plan for public safety personnel necessary to provide for the protection of a festival and its attendees from hostile members of the public or counter-demonstrators, or for traffic control outside the festival assembly area, or for general law enforcement in the vicinity of the festival.

*Noncommercial* means any festival organized and operated for charitable, religious, scientific, literary or educational purposes, or for the prevention of cruelty to children or animals, or where no part of the net earnings of which inures to the benefit of any private shareholder, individual or for-profit corporation, as such term is defined by the Official Code of Georgia.

*Outdoor Festival* means an outdoor public celebration or gathering which involves either the use of public parks belonging to the City or public streets, or on privately-owned property when it is reasonably expected that more than five hundred (500) people will gather for seven (7) or fewer contiguous days in a public park belonging to the City or in a public street, and which includes entertainment, dancing, music, dramatic productions, art exhibitions, parades or the sale of merchandise, food or alcohol, or any combination of the foregoing, and which requires the erection of stages, barricades, utility poles, booths, tents, or other temporary structures, or the use of parked vehicles or of permanent structures, and which of necessity requires for its successful execution the provision and coordination of municipal services to a degree significantly over and



# APPENDIX TO ORDINANCE NO. 02-O-1777

## TEXT: ATLANTA OUTDOOR FESTIVALS ORDINANCE OF 2003

above that which the city routinely provides under ordinary everyday circumstances. Any event which meets the aforestated definition but which shall be held on non-consecutive days shall be designated as separate events for the purposes of this ordinance. The definition of *outdoor festival* does not include *events which are solely* parades. Also excluded from the definition of *outdoor festival* herein is any event with a scheduled duration of three (3) hours or less, or at which the anticipated attendance is fewer than 250 persons.

*Permit fee* means the fee required to be paid pursuant to this article for the issuance of a permit to hold a public festival, where such fee shall be assessed to recover the direct and indirect costs associated therewith, and shall not exceed the administrative costs of regulation.

*Special Events Coordinator* means the person employed by the City to carry out the functions of this article in processing the application and maintaining any records or forms needed for such processing. If the position is vacant, or if the person in the position is on leave or absent from the City, the term shall apply to whomever the Chief of Staff may designate to fulfill the function on a temporary basis to administer this article.

*Supplemental user fee deposit* means a deposit conditioned upon good performance which shall be required of every applicant. Good performance in this context shall mean the cleaning of the festival area of litter and debris, and restoring parks and streets damaged in connection with an approved festival.

### Sec. 138-188. Scope.

(a) This article is intended to be the framework within which all outdoor festivals held in the city, as the term "outdoor festival" is defined herein, are approved and regulated.

(b) It shall be unlawful for any person or organization to hold an outdoor festival as defined herein within the limits of the city without complying with the procedures set forth in this article, provided that the requirements of this article shall not apply to a *city-sponsored event.*

(c) Additional festival operating guidelines, policies and procedures specific to staging a festival in city parks may be developed and adopted administratively and enforced by the City.

### DIVISION 2. PERMIT

### Sec. 138-201. Application.

Amendment Incorporated by krp/OMC 1/08/03

**APPENDIX, 4**



# APPENDIX TO ORDINANCE NO. 02-0-1777

## TEXT:  ATLANTA OUTDOOR FESTIVALS ORDINANCE OF 2003

Any person or organization desiring to hold an outdoor festival must make application for a permit to hold such event to the Special Events Coordinator in the Mayor's Office as specified in Section 138-207. Such application shall be accompanied by a non-refundable application fee as specified in Section 138-205. *Such application must be made no later than ninety (90) days prior to the date of the festival.*

The application must include the following information:

(1)     The name of the festival and its purpose in general terms.

(2)     The names of the persons or organizations sponsoring the festival, together with the addresses and telephone numbers of all such persons or organizations.

(3)     The dates and times of the proposed festival, including projected set-up and break-down and the opening and closing time for each day of the event.

(4)     Whether the event is commercial or non-commercial.

(5)     The specific location within the city where such festival is to be held.

(6)     The number of persons estimated to be in attendance at such event or festival.

(7)     A site plan showing the layout of the festival area, showing the *festival production  area* in detail, and specifying the boundaries of the overall *festival assembly area.*  The site plan should also include the location of portable toilets to be provided, and show the number of such toilets at each location.

(8)     Whether any street closings are requested and, if so, which streets and the dates and times of closing.

(9)     Whether any beer, wine or spirituous beverages are expected to be sold for personal consumption in public, together with a detailed proposal for any such sale, indicating among other things who is expected to be the vendor, whether such vendor presently holds any type of license for on-premises consumption of alcoholic beverages and stating the exact locations and times for such sales. This section shall contain a statement by applicant that it is agreed that all alcohol sales at the festival will cease no later than one hour before the scheduled end of each day of the festival.

(10)    Whether any temporary outdoor structures are proposed to be erected, describing them in

# APPENDIX TO ORDINANCE NO. 02-0-1777

## TEXT: ATLANTA OUTDOOR FESTIVALS ORDINANCE OF 2003

detail.

(11)     Whether any signs or banners are proposed to be erected, giving details.

(12)     Whether a parade is expected to be held in connection with the festival, stating the time, location and anticipated number of participants.

(13)     Whether any entertainment will be involved, giving details as to nature, time and place of such entertainment.

(14)     Whether there will be street vendors involved, giving details, including specifically contracted or regularly licensed vendors.

(15)     How the applicant proposes to insure the cleanup of the area, in detail.

(16)     A specific plan for *internal emergency services* for the festival, specifying the details of the plan.

(17)     A specific plan for *internal security* for the festival, specifying the number of off-duty police officers and private security guards which the applicant plans to hire, what arrangements the applicant has made for hiring them, and details of the plan for payment. The *internal security plan* shall specify that the number of off-duty police officers hired by the applicant shall be the same or more than the number of private security guards hired for such purpose. At the option of the applicant the security forces under the *internal security plan* may be comprised entirely of off-duty police officers.

The internal security plan must show that all off-duty law enforcement personnel to be used for internal security will be POST-certified, have jurisdictional authority in the festival area, and that all private security personnel contracted for by the applicant must be employed by companies licensed by the State of Georgia Board of Private Detective and Security Agencies. This section shall not preclude the use of "t-shirt" security in the festival production area in addition to personnel mandated herein. "T-shirt" security may be in addition to but may not be in lieu of the required off-duty police officers or private security personnel.

(18)     Whether utility services such as electrical power or water will be required, specifying the amount and type, and stating the applicant's proposal, if any, for obtaining such services.

(19)     Whether electrical wiring will be installed, specifying installation details.



# APPENDIX TO ORDINANCE NO. 02-0-1777

## TEXT: ATLANTA OUTDOOR FESTIVALS ORDINANCE OF 2003

(20)   Whether the applicant intends to gate the festival and charge an admission fee, specifying the amount of the fee and details as how the applicant proposes to gate the festival.

(21)   A certification by applicant that a Notice of Intent to Hold a Festival has been sent by registered mail or by hand delivery to all City Council members for areas affected by the festival and all Neighborhood Planning Units (NPUs) affected by the festival to which is attached a copy of this application, including all site plans and security plans. It shall be the responsibility of the NPUs to disseminate the application and attachments to the appropriate neighborhood associations. A copy of this notice without the attachments shall be attached to the application. If delivered by hand, a receipt must be obtained and attached. The applicant should retain the receipt for registered mail and be prepared to produce it for the Special Events Coordinator upon demand.

(22)   If requested, the applicant shall present the attendance totals from previous years festivals, and at the discretion of the Chief of Staff, attendance totals from such applicant may be verified through use of Atlanta Police Department or Festival Monitor crowd estimates from said event.

(23)   The applicant shall be provided with a copy of all ordinances deemed applicable to the conduct of an outdoor festival at the time of receipt of application.

**Sec. 138-201A. Festival Districts**

(a)   Festival Districts are hereby established as shown on the map or maps included as Attachment A-J, *which correspond to each designated Festival District and which delineate the boundaries of such districts.* The map or maps showing such boundaries shall be available at all times in the office of the Special Events Coordinator, for the review of applicants and the general public.

(b)   The purpose of such Festival Districts shall be to establish the policy of the City with regard to the allocation of its resources and with regard to the burdens placed upon the different neighborhoods and areas of the City. The City, in determining the location and boundaries of such districts, shall include in each such district one or more special events sites, such as parks. The City shall also consider the location and boundaries of police zones, where appropriate.

(c)   Effective June 1, 2003, no more than one Class A, Class B, or Class C outdoor festival shall be permitted to occur in the same Festival District at the same time, nor within 100 yards of another outdoor festival of a Class A, Class B, or Class C size, if outside the same district. For



# APPENDIX TO ORDINANCE NO. 02-0-1777

## TEXT: ATLANTA OUTDOOR FESTIVALS ORDINANCE OF 2003

purposes of this section, any outdoor festival or outdoor special event, other than a sporting event permitted by another governing body or a sporting event held by a private party, shall be considered the same as one permitted under this article.

(d)     The Chief of Staff, after consultation with the Commissioner of Parks, Recreation and Cultural Affairs and the Chief of Police, or their designees, may designate certain Festival Districts as having special limitations, such as a limitation on the frequency of permitted festivals within a particular district or within a particular park or special events site, if in the opinion of the Chief of Staff there are special considerations warranting such limitations, such as traffic, public safety, limitations contained in any Master Plan adopted by Council for such venue or district. Any such limitations, to be effective, must be noted in writing by the Chief of Staff on the face of the Festival District maps provided for in subsection (a) above, and shall be separately signed and dated by the Chief of Staff.

### Sec. 138-201B. Festival Monitors.

Festival Monitors shall be assigned to each permitted festival by the Special Events Coordinator. It shall be their responsibility, in coordination with the Special Events Coordinator, to monitor the activities of the applicant and those working with the applicant on the festival site, in order to insure that the terms and conditions of the permit and of this article are observed. Wherever possible, Festival Monitors will be assigned by festival district for consistency. In the event of material violations of the permit or of this article that the Festival Monitors reasonably believe constitute a threat to public safety or to the public welfare, the Festival Monitors shall be authorized to report the violations to the appropriate public safety, law enforcement or appropriate department personnel for immediate action. In the event of other material violations, the Festival Monitors shall make a written report of such violations to the applicant at the time of violation.   However, notwithstanding the requirement of making such reports, the festival monitors shall be authorized to take appropriate action in response to the violations, up to and including the revocation of the permit, or of a portion thereof.

### Sec. 138-202. Review of Application.

Upon receipt of the completed application and application fee required in Section 138-201, the Special Events Coordinator shall forward copies of the application to the Departments of Police, Fire, Public Works, Parks, Recreation and Cultural Affairs, and the Bureau of Buildings for their review. Copies shall also be forwarded to the council members representing the districts  in which the festival is proposed to be held. The persons designated in each such department for such review shall review the application, endorse their comments thereon,

Amendment Incorporated by kcp/OMC  1/08/03

**APPENDIX, 8**



# APPENDIX TO ORDINANCE NO. 02-0-1777

## TEXT: ATLANTA OUTDOOR FESTIVALS ORDINANCE OF 2003

including the number of extra personnel hours estimated to be required for each department, and return the comments to the Special Events Coordinator within seven (7) calendar days from receipt. The comments so forwarded shall be retained with the file of such application.

### Sec. 138-203. Criteria for grant of permit.

(a)     The Chief of Staff shall be charged with the responsibility and authority to determine whether a particular applicant shall be granted an outdoor festival permit in the time, manner and place proposed; whether modifications in the festival plan as to time, manner and place shall be required, according to criteria established by this article; or, whether such permit shall be denied altogether.

(b)     In determining whether to grant the particular permit in accordance with the time, manner and place requested. whether to deny the permit as requested and propose a modified time, manner and place, or whether to deny the permit altogether, the Chief of Staff shall be guided by the following criteria:

(1)     No permit shall be denied nor shall the applicant for a permit be given less favorable treatment as to time. manner. or place on account of any message which may be conveyed at a festival, or on account of the identity or associational relationships of the applicant.

(2)     No permit shall be denied nor shall the applicant for a permit be given less favorable treatment as to time, manner, or place on account of any assumptions or predictions as to the amount of hostility which may be aroused in the public by the content of speech or message conveyed by the festival, provided that reasonable accommodation as to time, manner and place may be required in order for the City to provide the resources necessary for police protection.

(3)     In determining the classification of the festival for fee purposes under Section 138-204:

     i.     No consideration may be given to the message of the festival, nor to the content of speech, nor to the identity or associational relationships of the applicant, nor to any assumptions or predictions as to the amount of hostility which may be aroused in the public by the content of speech or message conveyed by the festival.

     ii.     Consideration may be given to materials offered in support of determining the commercial or non-commercial status of an event as these terms are defined in 138-187. The *non-commercial* status of an event shall be determined by



## APPENDIX TO ORDINANCE NO. 02-0-1777

## TEXT:  ATLANTA OUTDOOR FESTIVALS ORDINANCE OF 2003

- the existence of a determination letter from the Internal Revenue Service identifying the applicant as an entity recognized as one described in section 501(c)(3) or 501(c)(4) of the Internal Revenue Code of 1986 (or as amended);

- the review of tax returns filed by the applicant as relates to the event, where the proceeds from the event were expended exclusively in support of charitable, educational, religious, scientific or literary purposes, or for civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare; or

- the prior history of the event as evidenced by past applications, conduct or previous events or appropriate documentation.

- Notwithstanding the foregoing, events that shall not charge an admissions fee <u>and</u> shall not offer, support or include vendors shall be deemed *non-commercial*.

iii.      Should the applicant choose not to provide documentation of its non-commercial status, the event shall be assumed to be commercial in nature.

(4)      When there are  competing applications which are substantially for the same time and place, the earlier or earliest application to be received in a substantially completed form accompanied by the requisite application fee shall be given priority as to the time and place requested, PROVIDED THAT priority as to the same time and place may be given to any festival which has been permitted at such time and place for five or more occasions in preceding years.

(5)      No applicant for, or recipient of, an outdoor festival permit shall  be required to provide for, or pay for the cost of,   public safety personnel necessary to provide for the protection of a festival and its attendees from hostile members of the public or counter-demonstrators, or for traffic control outside the *festival assembly area,* or for general law enforcement in the vicinity of the festival. The holder of a permit shall be required to provide a plan for *internal security*, as that term is defined in this article, for the *festival assembly area*, and shall be required to provide and pay for off-duty police officers and private security guards for such  *internal security* purposes, as required by the Chief of Staff.  The internal security plan must show that all off-duty law enforcement personnel to be used for internal security will be POST-certified, and that all private security personnel contracted for by the applicant must be employed by companies licensed by the State of Georgia Board of Private Detective and Security Agencies. In

Amendment Incorporated by krp/OMC 1/08/03

**APPENDIX, 10**

# APPENDIX TO ORDINANCE NO. 02-0-1777

## TEXT:  ATLANTA OUTDOOR FESTIVALS ORDINANCE OF 2003

determining the adequacy and appropriateness of any internal security plan, the Chief of Staff shall be guided solely by considerations of the number and qualifications of off-duty police and private security guards necessary to provide *internal security* to the *festival assembly area,* as indicated by experience with similar events. To this end, the Chief of Staff may consider the advice and counsel of public safety professionals and persons with expertise in handling or promoting similar events. In evaluating the *internal security plan* the Chief of Staff may not take into account the message of the festival, nor the content of any speech, nor the identity or associational relationships of the applicant, nor any assumptions or predictions as to the amount of hostility which may be aroused in the public by the content of speech or message conveyed by the festival. The *internal security plan* shall specify that the number of off-duty police officers hired by the applicant shall be the same or more than the number of private security guards hired for such purpose. At the option of the applicant the security forces under the *internal security plan* may be comprised entirely of off-duty police officers.

(6)     Permits granted pursuant to this article shall not authorize more than ten calendar days of festivals for any particular applicant per calendar year.

(7)     The Chief of Staff may deny a permit to an applicant who has failed to complete payment of any sums required for a previously permitted festival until such time as payment is received, or may condition the granting of a new permit on the payment of amounts in arrears in connection with previous festivals.

(8)     The Chief of Staff may deny a permit to an applicant who has failed to substantially perform a cleanup plan which was made a condition of a previous permit, or who has defaulted on a previous sanitation bond or fee or supplemental user fee deposit in connection with a permitted festival until such time as restitution is made in a manner and amount satisfactory to the Chief of Staff, or until a reasonable plan for correcting the past deficiency is agreed upon by the applicant and the Chief of Staff. Provided, the Chief of Staff may not require the payment of arrears for previous festivals or the restitution of damages from a previous festival, as otherwise set forth in this section, unless the Chief of Staff had mailed or delivered to the applicant a demand for such payment or restitution within sixty (60) days after the ending date of such previous festival.



# APPENDIX TO ORDINANCE NO. 02-0-1777

## TEXT: ATLANTA OUTDOOR FESTIVALS ORDINANCE OF 2003

(9)     The Chief of Staff may modify, deny or revoke a permit when, due to the scope of the proposed festival, and the number of police personnel required to provide protection and traffic control for the event, and due to the need for police personnel elsewhere in the city, the proposed festival would require the diversion of such a number of police personnel that it will be more likely than not that normal police protection elsewhere in the city cannot be provided continuously and safely for the duration of the festival event. A modification, denial or revocation based upon inadequate police resources under this paragraph shall state with specificity the reasons for the Chief of Staff's opinion, giving as much detail as is possible.

(10)    The Chief of Staff may deny or revoke a permit if the applicant has in this city or in any other locality violated the conditions and restrictions of the permit or has committed a violation of law or local ordinance, such that a permit previously granted to such applicant was revoked, if the Chief of Staff has good cause to believe that similar conduct may occur in the proposed festival, provided that such similar conduct is a material violation of this article or of laws or ordinances pertaining to the public order.

(11)    The Chief of Staff may deny a permit upon grounds set forth in this article, in which case he or she shall set forth in writing the reasons for such denial in as much detail as possible, and shall provide the same to the Councilmember(s) of the affected district. Or, the Chief of Staff, in granting the permit, may modify the requested time, manner, and place of such event for compelling reasons related only to the public safety, health, environment, or scheduling conflicts with other permitted uses at the time or place requested, provided that the Chief of Staff shall, if requested by the applicant, state in writing on the permit the reasons for the modification in reasonable detail. In denying the permit, or in granting the permit with modifications, the Chief of Staff shall not give any consideration to the message of the festival, nor to the content of speech, nor to the identity or associational relationships of the applicant, nor to any assumptions or predictions as to the amount of hostility which may be aroused in the public by the content of speech or message conveyed by the festival.

(12)    The Chief of Staff may revoke a permit at any time if it shall appear by competent evidence that the applicant has made a material misrepresentation or given incorrect material information on the application.  Prior to such revocation, the Chief of Staff shall notify the applicant of the evidence and provide the applicant an informal opportunity to rebut said evidence.    '

**Sec. 138-204. Criteria for approval.**

Amendment Incorporated by krp/OMC 1/08/03

**APPENDIX, 12**



## APPENDIX TO ORDINANCE NO. 02-0-1777

## TEXT: ATLANTA OUTDOOR FESTIVALS ORDINANCE OF 2003

(a)     After reviewing the comments of all the departments or bureaus submitting them, the Chief of Staff shall approve, deny, approve with modifications or upon conditions as set forth in Section 138-203. If the application is approved, the Chief of Staff, in consultation with the heads of affected departments. shall also impose any necessary restrictions or conditions as to time, manner and place to be observed in accordance with the public safety, environmental and administrative considerations which appear based upon the application, provided that such considerations shall not include any consideration of the content of any speech or message which may be conveyed by such festival, nor by any considerations concerning the identity or associational relationships of the applicant, nor to any assumptions or predictions as to the amount of hostility which may be aroused in the public by the content of speech or message conveyed by the festival.

Except as provided in subsection (b) of this section, under no circumstances shall the Chief of Staff approve any permit which allows the applicant to limit the use of public streets by pedestrians using the street to move from location to location or to limit the use of the public parks when use of the park by the general public shall not unreasonably disturb the activities of the festival. Nothing in this subsection shall be construed to prohibit the imposition of reasonable restrictions on the movement of the general public which are necessary for the carrying out of the festival; however, such restrictions shall not bar the admission of any member of the public on the grounds of race. color. religion, gender, gender identity, sexual orientation, age, disability or national or ethnic origin.

(b)     Streets may be closed, portions of streets and parks may be gated, and an admission fee may be charged in connection with an outdoor festival at the discretion of the Chief of Staff after consultation with the Chief of Police, the Fire Chief. and the Commissioners of Public Works and of Parks, Recreation and Cultural Affairs, as may be appropriate, due regard being given to the public safety and environmental effects of such closing, provided that all reasonable steps are taken to minimize the adverse effect such closings may have upon the public. In the event that an event is gated, no person shall be barred from entering the gated area on the grounds of race, color, religion, gender, gender identity, sexual orientation, age, disability or national or ethnic origin.

(c)     After the Chief of Staff approves the issuance of a permit the applicant may obtain such permit by agreeing to accept the classification and conditions imposed in accordance with this article, as well as the applicant's agreement to hold harmless the City of Atlanta and its officers and employees from any damages to persons or property on claims that arise from the permitted event (unless the applicant is prohibited by law from executing "hold harmless" agreements) and by paying the applicable permit fee and supplemental user fee deposit, which fees shall be determined according to the schedule set forth in Section 138-205.



# APPENDIX TO ORDINANCE NO. 02-0-1777

# TEXT:  ATLANTA OUTDOOR FESTIVALS ORDINANCE OF 2003

**Sec. 138-205. Fees.**

(a)     For classification purposes, the Chief of Staff shall evaluate the application by the anticipated number of persons attending the event over the entire period of the festival. In estimating this number, no regard shall be given to any estimate of the number of persons who may be anticipated to be in the vicinity of the festival as counter-demonstrators or to show hostility to any message the festival may be perceived as having. Nor shall there be any consideration of the content of any speech or message which may be conveyed by such festival, nor by any considerations concerning the identity or associational relationships of the applicant, nor to any assumptions or predictions as to the amount of hostility which may be aroused in the public by the content of speech or message conveyed by the festival. Unless such estimate shall appear to have been made in palpable bad faith or otherwise grossly in error, the Chief of Staff shall be guided by the estimate provided by the applicant. If the Chief of Staff determines not to adopt the estimate given by the applicant, he or she shall state the reasons in writing on the permit.

(b)     The classes of outdoor festival permits and the evaluated factors for each class shall be as follows:

      1.     *Class A permit.* For a festival at which the attendance is anticipated to be 50,000 persons or more over the entire period of the festival.

      2.     *Class B permit.* For a festival at which the attendance is anticipated to be between 20,000 and 49,999 persons over the entire period of the festival.

      3.     *Class C permit.* For a festival at which the attendance is anticipated to be between 10,000 and 19,999 persons over the entire period of the festival.

      4.     *Class D permit.* For a festival at which the attendance is anticipated to be between 2,000 and 9,999 persons over the entire period of the festival.

      5.     *Class E permit.* For a festival at which the attendance is anticipated to be between 250 and 1,999 persons over the entire period of the festival.

(c)     *Application Fee.* The application fee for each classification of permit shall be as follows:

      1.     Commercial

Amendment Incorporated by krp/OMC 1/08/03

**APPENDIX, 14**



# APPENDIX TO ORDINANCE NO. 02-0-1777

## TEXT:  ATLANTA OUTDOOR FESTIVALS ORDINANCE OF 2003

| | |
|---|---|
| Class A  Permit = 50,000 or more attendees | $150 |
| Class B Permit = 20,000 to 49,999 attendees | $150 |
| Class C Permit = 10,000 to 19,999 attendees | $100 |
| Class D Permit = 2000 to 9,999 attendees | $100 |
| Class E Permit = 250 to 1,999 attendees | $100 |

2.    Non-Commercial

| | |
|---|---|
| Class A  Permit = 50,000 or more attendees | $100 |
| Class B Permit = 20,000 to 49,999 attendees | $100 |
| Class C Permit = 10,000 to 19,999 attendees | $50 |
| Class D Permit = 2000 to 9,999 attendees | $50 |
| Class E Permit = 250 to 1,999 attendees | $50 |

(d)     *Permit Fee.*  After the Chief of Staff approves the issuance of a permit, the applicant may obtain such permit by agreeing to accept the classification and conditions imposed in accordance with this article and by paying the applicable permit fee, which fee shall be determined according to the following schedule:

1.    Commercial

| | |
|---|---|
| Class A  Permit = 50,000 or more attendees | $15,000 |
| Class B Permit = 20,000 to 49,999 attendees | $8,000 |
| Class C Permit = 10,000 to 19,999 attendees | $5,000 |
| Class D Permit = 2000 to 9,999 attendees | $2,500 |
| Class E Permit = 250 to 1,999 attendees | $500 |

2.    Non-Commercial

| | |
|---|---|
| Class A  Permit = 50,000 or more attendees | $9,000 |
| Class B Permit = 20,000 to 49,999 attendees | $3,000 |
| Class C Permit = 10,000 to 19,999 attendees | $1,500 |
| Class D Permit = 2000 to 9,999 attendees | $750 |
| Class E Permit = 250 to 1,999 attendees | $250 |

Amendment Incorporated by krp/OMC 1/08/03



# APPENDIX TO ORDINANCE NO. 02-0-1777

## TEXT: ATLANTA OUTDOOR FESTIVALS ORDINANCE OF 2003

(e)  *Proof of Insurance.*  Prior to the issuance of a permit, for any outdoor festival having been classified by the Chief of Staff as requiring a Class A, Class B or Class C festival permit:

1.  An applicant shall be required to furnish a fully paid public liability damage insurance policy procured from a company licensed to do business in Georgia.

2.  This policy must protect the City of Atlanta, its officers, agents, the festival and its contractors from any and all claims damages to property and or bodily injury which may result from or in connection with any of the operations carried on by the presenter of the festival and list the City of Atlanta as an additional named insured.  Insurance limit requirements are as follows:

    i.  $1,000,000 bodily injury total;

    ii.  $500,000 bodily injury to any one person;

    iii.  $100,000 property damage.

3.  The Special Events Coordinator must receive a copy of the certificate of insurance no later than two weeks prior to the date of the festival.

(f)  *Supplemental User Fee Deposit.*  To the extent that any festival may require additional funds expended on the part of the City of Atlanta in excess of the permit fee, the applicant shall be required to reimburse the cost of such additional funds to the extent that they apply to the provision of additional sanitation services, maintenance, immediate removal of human wastes and refuse, restoration of physical structures such as storm drains caused by damage during an event, or any identifiable clean-up or restorative action necessary to return the festival area to its status prior to the outdoor festival.

1.  No later than sixty (60) days after the last date of such festival, the Chief of Staff shall mail or deliver an invoice for such additional amount to the applicant detailing to the greatest extent possible the services for which the applicant has been charged.

2.  Upon satisfactory completion of the festival, and provided that no further amount is due to the City of Atlanta as set forth in subsection (g)(2) below, any unused portion of supplemental user fee deposit shall be refunded to the applicant. If any additional amount is due, the Chief of Staff shall request payment thereof, which shall be due within 30 days of receipt of written notification by the applicant.



# APPENDIX TO ORDINANCE NO. 02-0-1777

## TEXT: ATLANTA OUTDOOR FESTIVALS ORDINANCE OF 2003

Prior to the issuance of a permit, for any outdoor festivals having been classified by the Chief of Staff as requiring a Class A, Class B or Class C festival permit, the following shall be required:

1.  Where the event will require the City to expend funds over and above the normal costs of operating and maintaining the festival assembly area, then the applicant shall be required to deposit with the *Special Events Coordinator a sum of money* sufficient to defray any excess cost to the City which amount shall be equal to $12,500 for a Class A festival, $8,750 for a Class B festival, and $5,000 for a Class C festival.

2.  Such security may be in the form of cash, surety bond, or irrevocable letter of credit issued by a financial institution licensed in the State of Georgia; or such deposit may be reduced for good performance for three (3) consecutive years at previous festivals as evidenced by contracts or other documentation and no outstanding amounts owed to the City.

(g)     *Environmental Impact Fee.* It is in the interest of the City of Atlanta to maintain the parks in such condition as to allow for continual usage; therefore,

1.      For those parks which maintain conservancies, and such conservancies have on file a memorandum of agreement with the City of Atlanta, an applicant shall also be required to recompense said conservancy for any reseeding or recovery costs required; where such reseeding or recovery shall have been negotiated in advance with said conservancy and where such an agreement shall be memorialized and placed on file with the Chief of Staff.

2.      For those parks that do not maintain conservancies, an applicant shall also be required to recompense the City of Atlanta via the Department of Parks for any reseeding or recovery costs required; where such reseeding or recovery shall have been negotiated in advance with the Department of Parks and where such an agreement shall be memorialized and placed on file with the Chief of Staff. *Such recompense shall be accounted for in a Trust Fund established for that purpose.*

3.      Notwithstanding the above, if an event has been held in the City for three (3) consecutive years, the applicant may contract with private parties for the reseeding or recovery of parks, provided the scope of such reseeding or recovery has been negotiated in advance with the conservancy, if applicable, or with the Department of Parks, Recreation and Cultural Affairs and copies of all contracts

Amendment Incorporated by krp/OMC 1/08/03

**APPENDIX, 17**



# APPENDIX TO ORDINANCE NO. 02-0-1777

## TEXT: ATLANTA OUTDOOR FESTIVALS ORDINANCE OF 2003

with private providers are placed on file with the Chief of Staff.

### Sec. 138-206. Other permits and licenses.

Nothing in this article shall be construed as repealing other sections of this Code or other ordinances requiring separate applications for permits or licenses for specific portions of the proposed outdoor festival, such as parade permits, building, electrical, plumbing or related permits, licenses to sell alcoholic beverages or permits to sell in parks or on city streets. Those permits or licenses must be applied for separately in accordance with the laws or sections of this Code or other ordinances specifically governing such activities.

### Sec. 138-207. Notice of approval, notice of approval with modifications, notice of denial, revocation and appeal.

(a)     The Chief of Staff shall notify the applicant in writing of his or her determination on the application *within 90 days after the receipt of the application, but in no event later than forty-five (45) days before the date of the event.*

(b)     No application shall be submitted to the Special Events Coordinator in the Mayor's Office earlier than sixty (60) days after the closing date of any outstanding permit for the same or substantially similar event.

(c)     This notification shall inform the applicant of whether the applicant has been granted a permit to conduct an outdoor festival without modifications to the application; granted a permit to conduct an outdoor festival with modifications as to time, manner, or place, or with restrictions or conditions; or has been denied a permit to conduct an outdoor festival. The notification shall state clearly the terms of the conditions, restrictions or modifications if not agreed upon by the applicant or shall state in specific terms the reasons for the denial. The notice shall also inform the applicant of the right of appeal as provided in this article.

(d)     The Chief of Staff may revoke a permit at any time if it shall appear by competent evidence that the applicant has made a material misrepresentation or given incorrect material information on the application.  Prior to such revocation, the Chief of Staff shall notify the applicant of the evidence and provide the applicant an informal opportunity to rebut said evidence.



# APPENDIX TO ORDINANCE NO. 02-0-1777

## TEXT:  ATLANTA OUTDOOR FESTIVALS ORDINANCE OF 2003

(e)      Any aggrieved applicant shall have the right to a hearing before the Mayor or the designee, who may be a hearing officer appointed for that purpose, provided that the request for such hearing is made to the Chief of Staff within five (5) days after the receipt of the notice. Notices which are given only by mail shall be presumed to have been received three (3) days after the mailing. Notices given in person, hand-delivered to the address of the applicant or sent by facsimile transmission or e-mail shall be presumed to have been delivered on the date given or sent

## Sec. 138-208. Hearings and Appeals.

(a)      Hearings contesting the matters in the Chief of Staff's notice shall be held as provided in Section 138-207, shall be informal, and shall be scheduled within five (5) business days after receipt of the request for a hearing by the Chief of Staff. The hearing may be continued at the request of the applicant or to allow the attendance of any necessary party or witness, but only from day to day. The determination on such hearing shall be made at the conclusion of the hearing, and the Mayor or his or her designee shall issue a written determination within one (1) business day thereafter, which determination shall affirm or modify the decision of the Chief of Staff. If from a denial of a permit, the modified decision may reverse and grant a permit with conditions.

(b)      The hearing under this section shall be *de novo*, and shall be informal. Such hearing shall evaluate the Chief of Staff's decision and the application in accordance with the criteria of this article.

(c)      The written determination of the Mayor or the designee upon the hearing as provided in this section shall be the final decision of the City in the matter, and shall be subject to review by the Superior Court of Fulton County by a petition setting forth an appeal and naming the City of Atlanta as the defending party. The City shall expedite its response to such petition so as to allow the provision of a judicial determination of the matter no later than ten (10) days prior to the date of the festival.

## APPENDIX TO ORDINANCE NO. 02-0-1777

## TEXT:  ATLANTA OUTDOOR FESTIVALS ORDINANCE OF 2003

**Sec. 138-209. Other public gatherings.**

Nothing in this article shall be construed to prevent members of the public from assembling in the parks or streets for the purpose of making any speech or conveying any message to the public or to the government without holding an outdoor festival permit pursuant to this article.  Should any such persons wish to assemble for such purpose and should they not be holding an outdoor festival permit under this article, they shall not be prevented from doing so, provided that they have complied with any other ordinance or law, if there be any, regulating such other event or gathering, and provided they are peaceable and not in violation of any laws concerning the public order. Persons not holding such an outdoor festival permit under this article, however, will not be entitled to the benefits provided by this article, including but not limited to. the right to erect stages, barricades, utility poles, booths, tents, or other temporary structures, or the use of parked vehicles or of permanent structures, or to the assistance of city personnel in carrying out their event, unless otherwise authorized by some other ordinance or law.



# CITY OF ATLANTA

## PROPOSED FESTIVAL DISTRICTS



# CITY OF ATLANTA

## PROPOSED FESTIVAL DISTRICTS

**Attachment A**

1/3/03

RCS# 4358
1/06/03
4:31 PM


Atlanta City Council

Regular Session


02-O-1777        Repeal existing Outdoor Festivals Ord.
              & Enact Outdoor Festivals Ordinance 2003
                    ADOPT AS AMEND


                        YEAS:    13
                        NAYS:     1
                  ABSTENTIONS:    0
                  NOT VOTING:     1
                    EXCUSED:      1
                      ABSENT      0


Y Smith       Y Archibong   N Moore       Y Mitchell
Y Starnes     Y Fauver      E Martin      Y Norwood
Y Young       Y Shook       Y Maddox      Y Willis
Y Winslow     Y Muller      Y Boazman     NV Woolard

AO 440 (Rev. 8/01) Summons in a Civil Action

**ORIGINAL**

# UNITED STATES DISTRICT COURT

<u>NORTHERN</u>          District of          <u>GEORGIA</u>

CAMP LEGAL DEFENSE FUND, INC.
    Plaintiff,

           V.

CITY OF ATLANTA and GREG
PRIDGEON,

    Defendants.

**SUMMONS IN A CIVIL CASE**

CASE NUMBER: **1 0 3 CV 0 3 8 7**

TO: (Name and address of Defendant)

CITY OF ATLANTA
c/o Shirley Franklin, Mayor
City Hall, Suite 2400
55 Trinity Ave. SW
Atlanta, GA  30335

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Ralph Goldberg, Attorney
1766 Lawrenceville Hwy.
Decatur, GA   30033

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

LUTHER D. THOMAS

CLERK

_____
(By) DEPUTY CLERK
AO 440 (Rev. 8/01) Summons in a Civil Action

FEB 1 0 2003

DATE

AO 440 (Rev. 8/01) Summons in a Civil Action

ORIGINAL

# UNITED STATES DISTRICT COURT

NORTHERN _____ District of _____ GEORGIA

CAMP LEGAL DEFENSE FUND, INC.
   Plaintiff,

**SUMMONS IN A CIVIL CASE**

V.

CITY OF ATLANTA and GREG
PRIDGEON,
   Defendants.

CASE NUMBER: 1 03 CV 0387

TO: (Name and address of Defendant)

Greg Pridgeon
Office of the Mayor
55 Trinity Ave. SW
Atlanta, GA   30335

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Ralph Goldberg, Attorney
1766 Lawrenceville Hwy.
Decatur, GA   30033

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against
you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with
the Clerk of this Court within a reasonable period of time after service.

LUTHER D. THOMAS

FEB 10 2003

CLERK

DATE

(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action